IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

MARK GEORGE HENDRYCH,      )
      )
      )      2:18-CV-00701-MJH
      )
    Plaintiff,      )
      )
vs.      )
      )
SHELTAIR AVIATION LGA, LLC,      )
      )

    Defendant,

MEMORANDUM OPINION AND ORDER

Plaintiff, Mark George Hendrych ("Hendrych"), brings the within Motion to Compel (ECF No. 89) requesting that the Court Order Defendant, Sheltair Aviation LGA, LLC to produce certain documents, answer interrogatories, and permit the service of certain subpoenas to move forward beyond the fact discovery deadline of June 3, 2019.

As regards document production, Hendrych seeks to compel Sheltair to produce all documents related to the damage sustained by the subject aircraft, including a report by Kevin Olsen and a repair estimate prepared by Ocean Aire. Sheltair argues that it has produced the non-privileged portions of the Olsen report. Hendrych contends that the Olsen report is not protected by Work Product because it was prepared in the ordinary course of business and should be produced pursuant to *Am. Home Assurance Co. v. United States*, Civil Action No. 09-cv-258 (DMC), 2009 U.S. Dist. LEXIS 93597, at *7 (D.N.J. Oct. 7, 2009).

The work-product doctrine is embodied in Federal Rule of Civil Procedure 26(b)(3), which provides, in part:

> Ordinarily, a party may not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by or for another party or its
> representative (including the other party's attorney, consultant, surety, indemnitor,
> insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A).   The rule further provides:

> If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(B).

The work-product doctrine "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Intern.*, 897 F.2d 1255, 1265 (3d Cir.1990). In contrast, the doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993).

A document is considered to be prepared "in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979). "The work-product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation." *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996). Moreover, even if documents were prepared for a different case, work product protection may apply as long as the cases "are closely related in parties or subject matter." *Louisiana Mun. Police Employees Ret. Sys. V. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008).

Hendrych's reliance on *Am. Home Assurance Co.* is distinguishable from the above matter. In *Am. Home Assurance Co.,* the court held that there was no evidence that the "Olsen report was prepared primarily – or even tangentially – for the purpose of litigation. Rather, it is a general investigation report prepared by an insurer's representative in the normal course of business."

2009 U.S. Dist. LEXIS 93597, at *7. There, the suit was not commenced until well after the accident, and the court viewed it as a routine investigation that occurred just after the accident. However, in this case, the timeline of events regarding the accident and filing of this lawsuit suggests that Mr. Olsen was preparing his report anticipating that Hendrych would be filing suit against Sheltair. The accident at issue occurred on April 28, 2018, Hendrych provided a notice of claim to Sheltair's insurer on April 30, 2019, and Hendrych commenced the action on May 2, 2018 in the Allegheny Court of Common Pleas. Therefore, Mr. Olsen, as a representative of Sheltair's insurer, had reason to believe that any report he prepared was in anticipation of litigation. Accordingly, Hendrych's Motion to Compel with regard to the unredacted version of Mr. Olsen's report is denied.

As regard the Ocean Aire report produced by Leonard Boyd, Sheltair contends that this request is premature expert discovery. Specifically, Sheltair states that Leonard Boyd is a consulting expert to it and its counsel. The Federal Rules of Civil Procedure provide in relevant part:

> (D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Fed R. Civ. P. 26(b)(4)(D). Pursuant to this rule, Sheltair is not obligated to produce Mr. Boyd's report at this stage, and it will only be obligated to produce Mr. Boyd's report should he be so designated by counsel in expert discovery. Accordingly, Hendrych's Motion to Compel with regard to the Ocean Aire report is denied.

Next, as regards answers to Interrogatories Nos. 8 to 11, Hendrych asserts that Sheltair has failed to adequately answer them while Sheltair asserts that it already has. Interrogatory No. 8 states as follows, "[p]lease identify all facts why you believe Plaintiff should have waited for Ocean Aire to repair the damaged Seneca II, why you believe such repair would have restored the damaged Seneca II to its same former condition before June 30, 2018." Sheltair answered in part,

> Sheltair responds…upon information and belief, that: (i) the use of factory-new replacement parts from the subject aircraft's original equipment manufacturer, as proposed by each party's respective expert, would have restored the subject to its pre-incident condition, (ii) the foregoing repairs would have restored the subject aircraft to its pre-incident condition because they complied fully with the manufacturer's type certificate and FAA airworthiness standards, and (iii) the foregoing repairs could have been completed before June 30, 2018.

Upon review of this interrogatory and response, Sheltair has sufficiently responded without getting into the expert opinions that it will ultimately choose or not choose to use during the course of expert discovery. Should Sheltair choose to advocate for the proposition posed in Interrogatory No. 8 then it will do so when it discloses its expert reports.

Under New York Law, "[t]he measure of damages for injury to property resulting from negligence is the difference in the market value immediately before and immediately after the accident, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is the lesser." *Parkoff v. Stavsky*, 109 A.D.3d 646, 647, 970 N.Y.S.2d 817, 819 (2013)(citations omitted). As Sheltair has conceded liability, the prime issue will be the measure of damages. Because property damage of an airplane with its nuances, will require expert opinions, the discovery as posed by Hendrych belongs in the realm of expert discovery. Accordingly, Hendrych's Motion to Compel further responses to Interrogatory No. 8 is denied.

As regard Interrogatory No. 9, Hendrych propounded the following, "Please identify each aircraft that was available for purchase and delivery between April 28, 2018 and June 30, 2018,

which you believe to be comparable to Plaintiffs (sic) Seneca II, and all the reasons why, including

its maintenance, use, and storage histories." Sheltair responded in part as follows,

"Sheltair…states that no less than fifty-three (53) Piper Seneca aircraft were offered for sale at or

around the relevant time frame." Sheltair argues that the information sought is irrelevant because

Hendrych would not be entitled to replacement cost. Applying the standard set forth in *Parkoff*,

*supra*, Hendrych would not be able to recover the replacement value. It will ultimately be

Hendrych's burden to identify the measure of his damages, and therefore, the relevancy of

Sheltair's identification of replacement aircraft is tenuous. Accordingly, Hendrych's Motion to

Compel as regards Interrogatory No. 9 is denied.

As regards Interrogatories Nos. 10 and 11, the same state as follows:

Interrogatory No. 10

Please identify each person acting on behalf of Defendant and/or its insurer, including Starr Indemnity, who investigated the Collision and/or extent of damage to Plaintiffs Seneca II, and for each person, state the date of their investigation, any information they observed, and identify all reports and/or statements they prepared.

Interrogatory No. 11

Please identify the name, address, telephone number and email address of every person known, believed, or claimed by you to have knowledge of any facts or information related to the Collision and/or any of plaintiff's claims for damages; and describe the nature and subject matter of the facts and information your (sic) know, believe or claim are known by each such person and the source of his or her knowledge.

Sheltair contends that it has provided this information or that it is seeking information from expert

witnesses or otherwise protected as work product. As analyzed above, Hendrych's interrogatories

regarding expert or work product discovery are either privileged or premature. Therefore,

Hendrych's Motion to Compel, as regards Interrogatories Nos. 10 and 11, is denied are premature.

As regards Interrogatory No. 7, Hendrych propounded the following: "[p]lease identify each aircraft damaged by Defendant, or any another entity insured by Starr Indemnity, that was repaired by Ocean Aire and its related entities, and for each such aircraft repaired by Ocean Aire, you are requested to identify its owner, and produce all information in Ocean Aire's initial repair estimate and final invoice."   Hendrych argues that this information will demonstrate bias because Ocean Aire has a business practice of under estimating cost of repair and then escalating the actual cost of repair under its "hidden damage clause."   As discussed above, Ocean Aire or its representatives may or may not serve as experts in this case.   Information regarding Ocean Aire's bias will only be relevant to the extent that Sheltair designates Ocean Aire or its representative as an expert at trial.  Should Sheltair produce such an expert, then Hendrych can appropriately pursue this avenue during the time designated for expert discovery.   Therefore, Hendrych's Motion to Compel, as regards Interrogatory No. 7, is denied as premature.

As regards the subpoena to Ocean Aire, the same analysis regarding experts applies as Ocean Aire's representative may potentially serve as an expert.   Should Sheltair so designate Ocean Aire during the expert discovery phase, then Hendrych will be afforded the opportunity to discover pertinent information related to the defense's proffered opinions.   Therefore, Hendrych's Motion to Compel, as regards the Ocean Aire Subpoena, is denied.

As regards the Piper Aircraft subpoena, Hendrych argues that he needs testimony and documents from Piper Aircraft to rebut the timing and reparability evidence contained in the Ocean Aire repair estimate.  Sheltair argues that Hendrych had Ocean Aire repair estimate for over a year before serving notice just a week and half prior to the close of discovery.    While Sheltair's argument has merit, the Court's case management orders could have provided a clearer deadline that all discovery, including time for responses, should have been completed by June 3.  Therefore,

as the Piper Aircraft subpoena could include information that speaks to the claims and defenses of both parties, it would be unfairly prejudicial to deny an extension of fact discovery as to the Piper Aircraft Subpoena only. Therefore, Hendrych's Motion to Compel, as regards the Piper Aircraft Subpoena, is granted.

## ORDER

AND Now, this 12th day of July 2019, upon consideration of Plaintiff's Motion to Compel (ECF No. 89), Defendant's Response in Opposition (ECF No. 93), the arguments of counsel, and for the foregoing reasons, Plaintiff's Motion to Compel is DENIED in part and GRANTED in Part. It is hereby ordered as follows:

1. Plaintiff's Motion to Compel, as regard Requests for Production of Documents Nos. 1 and 2, is denied. Should an expert from Ocean Aire be so designated during expert discovery, the Plaintiff shall be permitted to conduct further discovery during the expert phase.

2. Plaintiff's Motion to Compel, as regards Interrogatories Nos. 8, is denied as premature to the extent it seeks expert opinions more properly raised during expert discovery.

3. Plaintiff's Motion to Compel, as regards Interrogatory No. 9, is denied.

4. Plaintiff's Motion to Compel, as regards Interrogatory No. 10 is denied as premature to the extent it seeks expert opinions more properly raised during expert discovery.

5. Plaintiff's Motion to Compel, as regards Integratory No. 11, is denied.

6. Plaintiff's Motion to Compel, as regards Interrogatory No. 7, is denied as premature to the extent it seeks expert opinions more properly raised during expert discovery.

7. Plaintiff's Motion to Compel, as regards the Ocean Aire Subpoena, is denied as premature to the extent it seeks expert opinions more properly raised during expert discovery.

8. Plaintiff's Motion to Compel, as regards the Piper Aircraft Subpoena, is granted. Plaintiff shall serve the subpoena within seven (7) days of this order. No further fact discovery shall be permitted. Discovery shall close on August 20, 2019, as regards the Piper Aircraft Subpoena.

BY THE COURT:

*/s/Marilyn J. Horan*
Marilyn J. Horan
United States District Judge