IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

MARK GEORGE HENDRYCH,    )
           )
           )          2:18-CV-00701-MJH
     Plaintiff,        )
           )
  vs.           )
           )
SHELTAIR AVIATION LGA, LLC,    )
           )

     Defendant,

MEMORANDUM OPINION AND ORDER

Presently before the Court are Plaintiff's Motion to Extend Time to Depose Defendant's

Experts, Strike Defendant's Appraisal Expert Report, and Compel Discovery Related to

Defendant's Affirmative Defenses (ECF No. 148), Defendant's Response in Opposition (ECF

No. 149), Plaintiff's Motion and Certificate of Conferral for Leave to File Supplemental

Certificate of Conferral and Reply Supporting Extensions of Time, Strike, and Compel (ECF No

150), and  Defendant's Response in Opposition (ECF No. 151).

Plaintiff moves the Court (ECF No. 148) as follows:  1.)  To extend time to depose

Defendant's Experts (Request 1); 2.) To Strike Defendant's Appraisal Report (Request 2); 3.) To

Compel documents responsive to Plaintiff's Requests for Production of Documents to

Defendant's Experts (Request 3); 4.) To Compel Fact Discovery related to the Ocean Aire Quote

and Comparable Aircraft denied by ECF Nos. 97 and 104 (Request 4); and 5.) To Compel

Defendant to Answer Plaintiff's Requests to Admit (Request 5).[1]

---

[1] Plaintiff's counsel filed this motion on May 17, 2021 and requested that the Court rule only on his first request and defer ruling on the remaining requests until it considered a Motion to Recuse, which the Plaintiff would file within 10 business days.  That time has elapsed, and the recusal issue is not before the Court.  Accordingly, the Court will address all five requests in Plaintiff's Motion (ECF No. 148).

I.      Introduction

While the Court hesitates to do so, the vitriol and dysfunction in Plaintiff's counsel's management of this case warrants commentary.  The filings in the case demonstrate a plethora of concerns.  Said concerns include allegations of attempted violence by defense counsel, defamation, unethical and bad faith conduct, dilatory behavior, and mischaracterizations of defense counsel and the Court.  The filings also demonstrate a glut of time and energy discussing issues nongermane to the principal claim in this case.  While the Court expects the litigants to engage in some thrust and parry, that symbiotic spirit departed early in this case.

Without remarking in extraordinary detail, the Court observes four particular issues that need to be addressed.  Three matters bear nothing on the merits of this case and only serve as continuing distractions.  The final matter delves more into the key issue of this case, yet also has unnecessarily preoccupied counsel and the litigants.

First, as regards the matter of the allegations of Defendant's counsel attempting to strike opposing counsel.  Defense counsel has denied these allegations and proffered an independent witness to corroborate.  In the event the conduct occurred, or if the allegations are false, both would constitute serious professional misconduct.  However, the resolution of those allegations or animosity amongst counsel has no bearing on this civil action between Mr. Hendrych and Sheltair.  Neither of the parties are served by any continuation of ad hominem attacks and allegations outside of the issues in this case.  If there are issues of professional misconduct that cannot be resolved as between counsel, then those matters should be pursued through other avenues.

Second, is the matter of Plaintiff's counsel's delays and requests for extensions.  The Court sympathizes with counsel's health concerns and the logistics related to the COVID-19

pandemic.   However, the Court observes a pattern of filing (some pre-pandemic) that includes

myriad excuses, late night/deadline filings, representations of a depleted health capacity,

attempts to circumvent and/or defy standing and case management orders,  and assertions of

extended research and writing time on non-germane issues.   The past several months in

particular leaves the Court to question whether this case is being well-served on balance with

Rule 1.16(a)(2) of the Pennsylvania Rules of Professional Conduct.[2]   Plaintiff's counsel has not

been shy in his filings regarding his health status, and by his own account, they appear quite

serious.   In this Court's view, Mr. Ladd's decision to continue representation in this case is best

left to his client, his health care providers, and himself.  With that said, the status quo is not

serving this case well and must not continue.  Moving forward, the Court would encourage

Plaintiff's counsel to reflect upon how best to serve his client and this case.

   Third, the Court will address Plaintiff's counsel's continued representation that the Court

stated the following to counsel and Mr. Hendrych:

> And, if you can't find a way to settle this, I will make rulings that will force you
> to settle this.

(ECF No. 142-1).   This statement comes from Mr. Hendrych's affidavit that such was stated by

the Court  after a status conference had adjourned, and when the court reporter was no longer

transcribing. While the Court has no independent recollection of such communication, the Court

frequently offers the observation that the best time for any case to settle is often before a Court

---

[2] On July 10, 2018, Plaintiff's Counsel was admitted by Pro Hac Vice Motion (ECF Nos. 18 and 19).   In his Motion, Mr. Ladd represented that he was a member of the bars of Virginia and the District of Columbia.  (ECF No. 18).  Both those  jurisdictions and Pennsylvania  have adopted Professional Conduct Rule 1.16(a)(2), which states  in relevant part, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:...(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client."

makes any ruling, as settlement dynamics, in any case, shift with each court decision.  That observation, if made at that time, would have applied to BOTH Plaintiff and Defendant.  The Court certainly does not recall expressing the verbiage as stated by Mr. Hendrych and would have never intended to express to the parties that the Court intended to force a settlement.   The Court's task here is to marshal the law and facts until the parties resolve the case, the legal issues compel a disposition, or a factfinder renders a verdict.  That has been and always will be the intent of this Court.

Finally, the Court would like to address the umbrage taken in this case by the characterization that the damage to Mr. Hendrych's plane was a "fender bender."   Such classification or nomenclature is not at issue in this case.  The Court expects that the proffered evidence will demonstrate that a Sheltair vehicle contacted Mr. Hendrych's airplane at low speed.  However, because airplanes have delicate parts and are complex machinery, the nature of that damage, and whether such damages could be sufficiently repaired, are the salient issues.  As this Court has attempted to focus the parties on a prior occasions, New York law provides as follows:

> The measure of damages for injury to property resulting from negligence is the difference in the market value immediately before and immediately after the accident, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is the lesser.

*Parkoff v. Stavsky*, 109 A.D.3d 646, 647, 970 N.Y.S.2d 817, 819 (N.Y. App. Div. 2013).   That standard, along with those advocated by counsel and accepted by the Court, will be the focus of this Court and its instructions to the jury.  Whether or not the damage is called a "fender bender" is a red herring to the key issues, namely 1).  Could the aircraft be safely repaired to its former condition?;  2).  If so, what would the reasonable costs of repair be? and/or 3).  What was the difference in the market value immediately before and immediately after the accident?

With that focus in mind, the Court now turns to the issues presented in Plaintiff's Motion.

II.     Discussion

<u>Request 1</u>

Plaintiff moves for an extension of time to depose Defendant's Experts because he asserts that Defendants withheld documents which allegedly demonstrate that Defendant's insurer, counsel, and experts have acted in bad faith and know the repair quote by Ocean Aire would not allow Plaintiff's Seneca to be returned to legal or safe flight status.  He also contends that Defendant's Appraiser's Report is based upon data that differs from Defendant's Answer to Interrogatory Number 9, which was provided prior to expert discovery.  He further argues that Plaintiff will be materially prejudiced without the requested discovery because he cannot cross-examine Defendant's Experts effectively without the experts' records to prove the Ocean Aire repair quote is not valid.  He also asserts that extrapolated values from Vref and BlueBook should not be admitted in this action because they are not comparable. He also argues that alleged misstatements by Defendant has required counsel to review extensive records and prepare filings. Finally, counsel cites to personal medical issues that have caused a hinderance to his work in this case,

In response, Defendant contends that Plaintiff's request for an extension should be denied because it is part of an ongoing pattern of last minute delays by Plaintiff and his counsel.  In particular, Defendant notes that, per this Court's February 18, 2021 Order, depositions of Defendant's experts were to occur on or before May 17, 2021 and all expert discovery was to be completed by June 7, 2021. (ECF No. 132).   Defendant asserts that Plaintiff made no effort to schedule depositions of defense experts.   Instead of attempting to meet those deadlines, Plaintiff filed the instant motion on the date of the expert deposition deadline.   Defendant further

contends that Plaintiff has waived depositions of Sheltair's experts and that such a ruling will not materially prejudice Plaintiff, as he will still have an opportunity to cross-examine Sheltair's experts at trial.

The Court will address the production of written discovery below, but it will now address whether to permit an extension to depose Sheltair's experts.   As discussed above, the delays and timing in this case are concerning.  Because of Plaintiff's counsel's medical issues and treatment schedule, some delay would be warranted, but the manner of Plaintiff's communications and timing of those communications are untenable moving forward.  Defendant's argument that Plaintiff has waived any depositions is well taken, and in ordinary circumstances, that argument would prevail.  However, the Court is concerned that Mr. Hendrych, himself, would be prejudiced by such an action as the circumstances appear to rest solely with the actions of his counsel.  Further, because this Court anticipates pre-trial motions addressing expert testimony and technical evidence, the interests of this case would benefit from complete expert depositions rather than a trial interrupted by complex objections and rulings.   Therefore, on balance, the Court will grant an extension for Plaintiff to complete expert depositions on or before July 15, 2021.  Should Plaintiff's counsel not complete or find himself unable to complete depositions on or before July 15, 2021, absent lack of availability of defense counsel or defense experts, no further depositions will occur.

Request #2

Plaintiff next moves to strike Sheltair's valuation expert (Jeffrey Soules) on two grounds. First, he argues Sheltair "knowingly misled" Plaintiff regarding the basis of its expert's valuation of his aircraft. Second, Plaintiff challenges the reliability of that Vref and the Aircraft Bluebook for valuation of Plaintiff's Seneca.

On the first ground, Plaintiff initially contends that Soules' report should be stricken because Defendant knowingly misled Plaintiff to believe that Defendant would base its value of Plaintiff's Seneca upon documents produced in discovery and interrogatory responses, which included 53 "comparable" Senecas rather than Vref and Bluebook values as identified in Soule's report.   Defendant responds that the timing of the disclosure of Sheltair's expert's methodology is determined by expert discovery deadlines, not fact discovery deadlines.   With regard to the pre-expert written discovery responses, Defendant contends that nothing in its served response indicates that it would utilize the enumerated 53 Senecas as a basis for its expert's valuation. Instead, Defendant argues that the interrogatory in question requested information about the value of Plaintiff's particular aircraft.

Here, the pertinent interrogatory asked about "comparable" aircraft for sale "between April 28, 2018 and June 30, 2018."   Sheltair objected and stated that it was not providing any expert discovery or opinions, and that the subject of the interrogatory was a "moot point" as replacement aircraft is "not a measure of recoverable damages under applicable law."  On this point, Defendant is correct as the market value of the Seneca before and after the accident would be a potential measure of damages. *See Parkoff, supra.*  Defendant was not obligated to answer the interrogatory any differently that it did under the timelines for fact discovery and expert discovery and given the applicable law as to damages. Therefore, the Court will not strike Soule's report on the basis of how Sheltair answered Plaintiff's interrogatories versus the valuation methods that appeared in Soule's expert report.

Next, Plaintiff appears to challenge Mr. Soule's opinion under F.R.E. 702 on the basis that Mr. Soule's opinions are not based upon reliable principles and methods.   Plaintiff's contends Mr. Soules' opinion did not demonstrate that he personally "knows the Sales Database"

underlying the Vref and Bluebook publications.   Defendant argues that Vref and Bluebook are

both recognized as commonly-used resources in the industry regarding aircraft valuation. *See,*

*e.g., CB Aviation, LLC v. Hawker Beechcraft Corp.*, 2011 U.S. Dist. LEXIS 128918, at *13 n.1-2

(E.D. Pa. Nov. 8, 2011). Defendants also contend that Soules need not have personal knowledge

as to Vref and Bluebook's internal "algorithms," because experts are permitted by F.R.E. 703 to

rely on industry standard publications.  "An expert may base an opinion on facts or data in the

case that the expert has been made aware of or personally observed. If experts in the particular

field would reasonably rely on those kinds of facts or data in forming an opinion on the subject,

they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

Here, Plaintiff's Motion to Strike Soule's Report on the basis of Fed. R. Evid. 702 and/or

703 is at best premature given.   Defendants proffer regarding the sufficiency of Soule's opinion

and reliance on Vref and the Bluebook appear to comport under the Rules of Evidence.  With

that said, the Plaintiff will have an opportunity to depose Mr. Soule and should a basis arise to

exclude his report, the parties will have an opportunity through pre-trial motions.

Accordingly, Plaintiff's Motion to Strike Soule's Expert Report is denied, without

prejudice.

Request #3

Next, Plaintiff moves to compel Defendant to produce documents responsive to

Plaintiff's Request for Production of documents.  In particular, he requests responses from

Defendant's Expert, Leonard Boyd.

Request for Production No.  8 seeks all written communications between Boyd and the

FAA, Piper Aircraft, Starr Indemnity, and/or a DER regarding Plaintiff's Seneca. Sheltair argues

that it has already produced Boyd's entire expert file to Plaintiff, and there are simply no non-privileged documents responsive to this request.

Request for Production No. 9 seeks "[a]ll documents" relating to Ocean Air's repair of other aircraft unrelated to Plaintiff's Seneca, including all related communications, documentation, photographs, estimates, work orders, invoices, etc."   Defendant argues that this request seeks a voluminous amount of information unrelated to this case.  Further, Defendant contends it demands the production of confidential information regarding unrelated third parties and their private aircraft. Therefore, Defendant contends that the request is overly broad, vague, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of this case.

Request for Production Number 10 seeks Ocean Aire's Repair Station Manual. Defendant objects because the document contains private, propriety, and confidential information. Further, Defendant asserts that, since Boyd did not rely upon it in drafting his quote or report, disclosure of the document is not required by Rule 26.

Request for Production Number 11 seeks all estimates, work orders, and final invoices for aircraft repaired where Starr Indemnity was the insurer since May 14, 2018. Again Defendant objects because the request demands production of confidential documentation relating to repairs of other third parties' aircraft that have nothing to do with this case. As a result, it contends that the request is overly broad, vague, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of this case. Sheltair asserts that Starr has not been Boyd's customer for any estimate since May 14, 2018, and Boyd does not know off hand whether it was the insurer for any of his customers, as he does not deal directly with their insurers. Further, Sheltair contends that attempting to determine whether Starr was another customer's insurer in the past

two years would take substantial research and be unduly burdensome and not proportional to the needs of this case.

Here, Defendant's objections are well taken, as Plaintiff's requests appear overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, Plaintiff's Motion to Compel, with regard to document requests related to Mr. Boyd, is denied.

<u>Request #4</u>

Plaintiff next moves to compel fact discovery related to the Ocean Air Quote and Comparable Aircraft denied by ECF Nos. 97 and 104.  In 2019, Plaintiff sought to serve a subpoena on Ocean Aire regarding its quote to repair Plaintiff's aircraft. (ECF No. 89). Sheltair responded that Boyd, the person who prepared the Ocean Air estimate, had been retained as its expert, and so his opinions were not yet discoverable. (ECF No. 93). The Court then held that Boyd was an expert, and his report would be due at the time designated by an expert discovery order. (ECF No. 97).  Sheltair then produced Boyd's expert report in accordance with this Court's order in September of 2020 (ECF No. 115-3) and produced Boyd's expert file to Plaintiff.

The issues raised by Plaintiff are best served by deposing Mr. Boyd.  All other matters regarding Mr. Boyd have been appropriately disclosed, and this Court is not convinced that any of the requested matters from Mr. Boyd are relevant to the claims and issues in this case. Accordingly, Plaintiff's Motion to compel fact discovery related to the Ocean Air Quote and Comparable Aircraft is denied.

<u>Request #5</u>

Finally, Plaintiff moves to compel answers to Plaintiff's Requests for Admissions, which include requests for facts and on topics related to Expert Boyd's report.  Defendant argues that fact discovery in this matter closed on June 3, 2019. (ECF No. 71). Plaintiff's Requests for Admission (RFA) were served on December 19, 2020.  Sheltair also argues that it is improper to seek expert discovery through RFAs. The Federal Rules of Civil Procedure do not authorize RFAs as a method of expert discovery. *See* Fed. R. Civ. P. 26(a)(2); Fed. R. Civ. P. 26(b)(4)(A); Fed. R. Civ. P. 36(A)(1). Second, Courts also have recognized that RFAs are an inappropriate method to seek expert discovery.   As observed by one,

> The Court also has little trouble concluding that the subject requests for admissions are fact, rather than expert, discovery for purposes of the Deadline Order. Requests for admission are not typically thought of as expert discovery. Furthermore, the Federal Rules of Civil Procedure explicitly provide only for expert disclosures, reports and depositions. See Fed.R.Civ.P. 26(a) (2), (b)(4). Thus, the Court rejects the argument that the subject requests should be considered expert discovery for purposes of the Deadline Order.

*In re Engle Cases*, 2012 WL 4357431, at *2 (S.D. Fla. Sept. 21, 2012).  Likewise, Rule 36 states that RFAs may only be served upon a "party" and not an expert.  Fed. R. Civ. P. 36. Finally, Sheltair already provided Mr. Boyd's report and expert file to Plaintiff.

Here, the RFAs were untimely and improperly addressed to an expert.  Accordingly, Plaintiff's Motion to Compel Answers to Requests for Admissions is denied.

## ORDER

And now this 14th day of June 2021, following review of Plaintiff's Motion to Extend Time to Depose Defendant's Experts, Strike Defendant's Appraisal Expert Report, and Compel Discovery Related to Defendant's Affirmative Defenses (ECF No. 148), Defendant's Response in Opposition (ECF No. 149), Plaintiff's Motion and Certificate of Conferral for Leave to File Supplemental Certificate of Conferral and Reply Supporting Extensions of Time, Strike, and

Compel (ECF No 150), Defendant's Response in Opposition (ECF No. 151), the arguments of

counsel, and for the reasons stated above, it is hereby ordered as follows:

1.  Plaintiff's Motion to Extend to Complete Depositions is Granted.  Plaintiff shall complete expert depositions on or before July 15, 2021.  Should Plaintiff's counsel not complete or find himself unable to complete depositions on or before July 15, 2021, absent lack of availability of defense counsel or defense experts, no further depositions shall occur.

2.  Plaintiff's Motion to Strike Soule's Expert Report is denied, without prejudice.

3.  Plaintiff's Motion to Compel, with regard to document requests related to Mr. Boyd, is denied.

4.  Plaintiff's Motion to compel fact discovery related to the Ocean Air Quote and Comparable Aircraft is denied.

5.  Plaintiff's Motion to Compel Answers to Requests for Admissions is denied.

6.  Plaintiff's Motion and Certificate of Conferral for Leave to File Supplemental Certificate of Conferral and Reply Supporting Extensions of Time, Strike, and Compel is denied as moot.

7.  On or before July 22, 2021, Counsel shall file a joint proposed scheduling order for any dispositive motions and/or Motions in Limine.

BY THE COURT:

Marilyn J. Horan
United States District Judge